(No. 19889.—)
T. H. KENNELL, SR., Plaintiff in Error, *vs.* ALVA E. HER-
BERT *et al.* Defendants in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 12, 1931.*

R. WAITE JOSLYN, for plaintiff in error.

WILLIAM E. PERCE, and ROBERT L. KEMLER, (SHERMAN C. SPITZER, and NORBERT B. TYRRELL, of counsel,) for defendant in error Mary E. Kruse.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, T. H. Kennell, Sr., filed his bill in the circuit court of Kane county against Alva E. Herbert, Matie Herbert, his wife, Mary Kruse, Clifford A. Thomas and Sam T. Peterson, trustee, to foreclose a trust deed. Answers were filed, the cause was heard by the chancellor, the bill was dismissed for want of equity, the decree was affirmed by the Appellate Court for the Second District, and the case comes to this court upon a writ of *certiorari.*

The evidence shows that the Charles Rippberger Company was a co-partnership consisting of Sam T. Peterson,

(the trustee named in the trust deed,) Walter C. Rippberger and Sophia Rippberger. They had been engaged for a number of years in loaning money in the city of Elgin. Alva E. Herbert and wife were the owners of four lots in the city of Elgin, occupied by buildings. They applied to the Rippberger Company for a loan of $1700. They executed four notes—three for $500 each and one for $200—all dated October 18, 1919, and signed by Herbert and wife, payable to "ourselves" at the office of the Rippberger Company, due five years after date, with interest at six per cent, payable semi-annually, and endorsed on the back by the makers. These notes contained no prepayment privilege. To secure the notes a trust deed was executed on the four lots in Elgin to Peterson, as trustee. The trust deed described the notes as to dates, amounts, when and where payable. Herbert received the money at the Rippberger office and delivered the notes and trust deed to Peterson. Either on the same day or within a few days thereafter plaintiff in error, Kennell, purchased the notes from Peterson, the trustee. On February 3, 1921, Herbert and wife entered into a written contract to convey to Kruse and wife, free and clear of all incumbrances, the real estate covered by the trust deed. The consideration was to be $3500, and $500 was paid by Kruse to Herbert, which Herbert paid to the trustee on February 4, 1921. An abstract of title was delivered to Kruse and it was examined by an attorney employed by him. The abstract showed the trust deed, the dates and amounts of the notes and when and where due. The attorney notified Herbert that before the transaction could be closed Herbert would be required to obtain a release of the trust deed. Herbert was told by Peterson that before Peterson would execute a release Herbert would either have to pay the $1700 and interest or execute another trust deed on other property owned by Herbert. On April 16, 1921, Herbert executed another trust deed on other property to Peterson as trus-

tee. On April 19, 1921, Peterson, as trustee, executed a release of the trust deed first above mentioned and delivered it to Herbert, who delivered it to the attorney for Kruse, and it remained in the hands of that attorney for about four years before it was filed for record. Herbert was informed at the time the release was executed that Peterson did not have the trust deed and notes but he promised to get them or to destroy them. Herbert and wife conveyed the premises by warranty deed to Kruse and wife, and Kruse paid the balance of the $3500. The evidence shows that Kennell authorized his son to transact all business with reference to the $1700 trust deed and notes. Kennell and his son were acquainted with Herbert and his wife. Mrs. Herbert had worked for them before she was married. The interest upon the notes and trust deed released was paid regularly after the release to Kennell by the trustee by a Rippberger check. The trust deed and notes were in the continuous possession of Kennell after they were first delivered to him. Kennell had no knowledge that a release had been executed or that another trust deed had been taken on other property. Neither Kennell nor his son advised Herbert or his wife that they owned the notes. Herbert believed the notes were held or had been destroyed by Peterson, as trustee, until December, 1925, when the trustee and his co-partners filed a petition in bankruptcy. A day or two after the petition in bankruptcy was filed the son of Kennell called upon Herbert and advised him that he held the notes and wanted to know what was to be done with reference to them. Herbert told him he had paid the notes years before, and he asked Kennell why he had never spoken to him about the matter. The son on two or three occasions called at the Rippberger office and consulted Peterson, the trustee, and Walter C. Rippberger, prior to the bankruptcy proceeding, demanding payment. The notes were past due, and Kennell told Rippberger that if they were not paid promptly he would start legal proceedings

to collect them, and after the bankruptcy proceedings were begun he filed this bill to foreclose.

The sole question in this case is as to the validity of the release executed by Peterson, as trustee, on April 19, 1921, which was about two years after the notes and trust deed were executed and about three years before the maturity of the notes.

In a suit to foreclose a lien against land the rights of the parties are governed by the law as administered in courts of equity and not by the law which obtains in actions to recover judgments upon the notes secured. (*Bartholf* v. *Bensley,* 234 Ill. 336.) A trustee is one to whom the property of another is legally committed in trust. The word "trustee," when appended to the name of a payee, is sufficient to charge persons dealing with the trustee with notice of restrictions and limitations on the trustee's power over the instrument. The term is a warning and a declaration to everyone who reads it that the person so named is not the owner of the property to which it relates, that he holds it for the use and benefit of another, and that he has no right to deal with it except in accordance with the terms of the trust. (*Owens* v. *Nagel,* 334 Ill. 96; *Henshaw* v. *State Bank,* 239 id. 515; *Chicago Title and Trust Co.* v. *Brugger,* 196 id. 96.) Where a trust deed is owned and possessed by a third party who also owns and holds the note for which the trust deed is security the trustee has no implied authority to receive payment of the note, and if payment is made to the trustee without authority and he releases a portion or all of the property from the lien of the trust deed prior to the maturity of the notes, the release has no effect upon the rights of the owner and holder of the trust deed and note to foreclose the same. (*King* v. *Harpster,* 306 Ill. 202.) The owner and holder of notes secured by a trust deed is not bound by unauthorized payments to the trustee before maturity, and the payor is not justified in relying upon representations made

by the trustee when the trustee has neither the actual nor implied authority to receive such payments and where the notes are not surrendered but remain in the hands of the owner and holder, who had no knowledge of the payments. If one pays to the trustee named in a trust deed the debt secured thereby before maturity which the trustee is not authorized to receive, and the trustee releases the trust deed but does not have possession of the notes, which are owned by and in the possession of a third party, the person so paying is chargeable with notice of the trustee's want of power to receive payment. The inference of authority to receive payment arises from the possession of the trust deed and notes by the person to whom the payment is made, the inference of authority is founded upon such possession, and it does not exist without such possession. (*Fortune* v. *Stockton,* 182 Ill. 454; *Sliger* v. *Bent,* 111 id. 328; *Cooley* v. *Willard,* 34 id. 68; 1 Am. & Eng. Ency. of Law, 1026.) In equity, a release by the trustee, unauthorized by the terms of the trust deed or by the *cestui que trust,* will have no effect upon the trust deed as between the original parties or subsequent purchasers with notice. (*Connor* v. *Wahl,* 330 Ill. 136; *Vogel* v. *Troy,* 232 id. 481; *Havighorst* v. *Bowen,* 214 id. 90; *Lennartz* v. *Quilty,* 191 id. 174; *Ogle* v. *Turpin,* 102 id. 148.) Where the release is executed by the trustee after the indebtedness is past due, in the absence of evidence of notice to subsequent purchasers such subsequent purchasers will be protected. *Mann* v. *Jummel,* 183 Ill. 523.

In this case there were four notes. They were all dated on the same day, were payable to "ourselves," each was due five years after date, and principal and interest were payable at the office of the trustee. The trust deed described the notes as to dates, amounts, when due and where payable. The notes and trust deed were endorsed by the makers and delivered to the trustee. They were sold, assigned and delivered to Kennell either on the same day they

were executed or very shortly thereafter and remained in his possession after such delivery. The trustee did not have authority to receive the principal, or any part thereof, prior to the time it became due, without the consent of the owner and holder of the notes and trust deed. He was without authority to transfer the trust deed to other property, or to release the trust deed, or take other security for its payment. His only authority was to handle the trust property at the time and in the manner specified and in no other way. When Herbert, almost three years before the notes were due, made a contract to sell the property, he was informed by the attorney representing Kruse that the trust deed would have to be released. Herbert was chargeable with notice of the limited authority of the trustee. The evidence shows that at the time the trust deed was released Herbert asked the trustee with reference to the custody of the notes and trust deed and was informed that the trustee did not have the notes but that he would either get them and deliver them to Herbert or would see that they were destroyed. These facts were sufficient to put Herbert upon inquiry. At that time the notes and trust deed were in the hands of Kennell, who was the owner. Under the authorities the release was invalid as between Kennell and Herbert.

The release was also invalid as between Kennell and Kruse. At the time Kruse entered into the contract with Herbert to purchase the property an abstract of title was furnished to Kruse, which was delivered to his attorney for examination. The attorney testified that this abstract showed that there was a trust deed on the property to Peterson and that the trust deed was given to secure four notes dated October 18, 1919, all of which were due five years after date. This abstract was sufficient notice to Kruse and his attorney that the trustee held title for some third party and that the notes were not due at that time. It was a warning that the authority of the trustee to release was limited and that a mere release without the surrender

of the notes might not be sufficient. The attorney advised Herbert that he must secure the release but paid no attention to the question of the surrender of the notes and trust deed. Under these facts Kruse occupied no better position than Herbert, and the release was invalid as between Herbert and Kruse on the one hand and Kennell on the other. Kruse, as purchaser of the premises, had notice of the terms of the trust deed on record that the notes were not due and contained no pre-payment privilege, and that the trustee for that reason had no authority from such trust deed to receive payment of the notes and release the trust deed before maturity. Therefore when he, Kruse, purchased the property and accepted the release without also requiring the surrender of the notes he did so at his peril.

The evidence shows that the notes and trust deed were delivered to Kennell either on the day they were executed or within a few days thereafter. Any inquiry which Kennell might have made of Herbert at that time would have been of no avail, for the reason that there were no equities existing at that time which would prevent the collection of the notes or the foreclosure of the trust deed. Kennell had possession of the notes after the date they were delivered to him. He did not inform Herbert that he owned the notes, but that fact did not justify Herbert or Kruse in not exercising that degree of care in securing the release which the law required of them.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause remanded, with directions to enter a decree of foreclosure as prayed in the bill.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*