Albert Winkel and Carl F. Winkel, Appellants, v.
Jacob Haning et al., Appellees.

Gen. No. 8,520.

Opinion filed November 4, 1931. Rehearing denied and opinion modified January 7, 1932.

RALPH DEMPSEY and P. A. D'ARCY, for appellants.

T. N. SMITH and WM. A. POTTS, for appellees.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is a suit in equity to set aside an alleged unauthorized marginal release of a trust deed and to foreclose the equity of redemption of the grantors in said trust deed. The bill of complaint was filed to the May, 1929, term of the circuit court of Tazewell county by appellants, Albert Winkel and Carl F. Winkel, the legal owners and holders of two unpaid bonds, secured by said trust deed, against appellees Jacob Haning and Emma B. Haning, the grantors therein, and certain other parties, including the unknown owners of certain other bonds.

Appellants' bill alleges, and the evidence tends to establish, that Albert Winkel is the owner of bond numbered 6,306 in the principal sum of $1,000 and that Carl F. Winkel is the owner of bond 6,307 in the principal sum of $5,000; that both of said bonds are dated March 1, 1920, and payable to bearer at the Farmers

National Bank of Pekin, Illinois, with interest at 5½ per cent per annum, payable annually; that said bonds are secured by a trust deed on certain real estate in Tazewell county, executed to one John Fitzgerald as trustee; that said Albert Winkel and Carl F. Winkel purchased said bonds for a valuable consideration before maturity; that said appellants have been at all times since the purchase of said bonds, and are now, the legal owners and holders thereof, and that no part of said bonds, or any interest thereon from the 1st day of March, 1928, has been paid to said appellants.

The bonds held by appellants are two of a series of 14 bonds, numbered 6,297 to 6,310, both inclusive, aggregating $30,000, all dated March 1, 1920, and payable to bearer at the Farmers National Bank of Pekin, Illinois, on March 1, 1925, with interest from date at 5½ per cent per annum, payable annually. The parties defendant to the bill of complaint are Jacob Haning, Emma B. Haning, his wife; John Fitzgerald, trustee; Arthur A. Sipfle, successor in trust; H. Redlingshafer, the unknown owners of bonds dated March 1, 1920, numbered 6,297 to 6,305, both inclusive, and 6,308 to 6,310, both inclusive, secured by trust deed to John Fitzgerald, trustee, recorded in book 41 of trust deeds, page 23, of the records of Tazewell county, Illinois; and the unknown owners of bonds dated March 1, 1928, numbered 8,384 to 8,403, both inclusive, and secured by a trust deed to John Fitzgerald, trustee, recorded in book 41 of trust deeds, page 375, of the records of Tazewell county, Illinois.

Summons was duly served on all defendants except H. Redlingshafer and the various unknown owners of the bonds above described. H. Redlingshafer entered his appearance in writing in said cause on May 4, 1929, and jurisdiction was obtained over the various unknown owners by publication as provided by law. Appellees Jacob Haning and Emma B. Haning filed their joint and several answers to the bill of com-

plaint and appellants Albert Winkel and Carl F. Winkel filed their replication thereto. No answer or entry of appearance was filed by any parties defendant to said cause except as above set forth. On May 13, 1929, an order was entered in said cause finding that the court had jurisdiction of the subject matter of said cause and of all parties thereto, defaulting all parties defendant who had not answered, and referring said cause to the master in chancery to take the proofs of the respective parties who had joined issue as aforesaid, and report the same to the court, together with his conclusions of law and fact.

The master proceeded with the taking of testimony touching the issues involved, and when he had completed his report he furnished copies thereof to the respective parties and gave them notice to file objections thereto. Said report was adverse to appellants and recommended that their bill of complaint be dismissed for want of equity. Objections to said report on behalf of appellants were filed with said master, who overruled said objections and filed his report in the circuit court of said county. On motion of appellants the court allowed the objections to stand as exceptions to said report, and on a hearing had in open court said exceptions were overruled by the chancellor and a decree entered approving the findings of the master and dismissing the bill for want of equity at the cost of appellants. Thereupon an appeal was prayed to the Appellate Court of the Third District and allowed. Bond was filed within the time specified and appellants having perfected their appeal in the manner provided by law, the cause is presented to this court for consideration.

The controversy between the parties hereto arises out of the following state of facts: On March 1, 1920, Jacob Haning executed 14 farm mortgage bonds, to wit: bonds numbered 6,297 to 6,306, inclusive, each in the principal sum of $1,000, and bonds numbered 6,307

to 6,310, both inclusive, each in the principal sum of $5,000. The bonds were dated March 1, 1920, were payable to bearer five years after date at the Farmers National Bank of Pekin, Illinois, and bore interest from March 1, 1920, at the rate of 5½ per cent per annum, payable annually, evidenced by coupons of even date with said bonds, payable to bearer at said bank.

On the same date, to wit, March 1, 1920, said Jacob Haning, his wife, Emma B. Haning, joining with him, executed a trust deed to John Fitzgerald, as trustee, with Arthur A. Sipfle, successor in trust, conveying the east half of the northwest quarter and the west half of the northeast quarter in section 18, township 23 north, range 2 west of the third principal meridian, Tazewell county, Illinois, subject to the right of way of Peoria, Lincoln and Springfield Traction Company, containing, exclusive of said right of way, 155 acres, more or less, to secure the owners and holders of said bonds numbered 6,297 to 6,310, both inclusive. This trust deed, duly acknowledged on March 6, 1920, was filed for record in the recorder's office of Tazewell county on March 9, 1920, and recorded in book 41 of trust deeds, page 23.

Two of the bonds secured by said trust deed, to wit, bond No. 6,306, in the principal sum of $1,000, and bond No. 6,307, in the principal sum of $5,000, were purchased from the trustee, John Fitzgerald, subsequent to March 1, 1920, by one Mina Winkel Reuling, who died testate a resident of Tazewell county, on January 26, 1924. Testatrix, in and by her last will, bequeathed to her brother, appellant Carl F. Winkel, the sum of $5,000, and to her nephew, appellant Albert Winkel, the sum of $1,000, and in the settlement of said estate said appellants received from the executrix of the last will and testament of said Mina Winkel Reuling, deceased, the bonds in question as satisfaction in kind of the bequests provided for them by said

decedent. As such legatees they came into possession of said bonds a short time subsequent to March 1, 1925.

At the maturity of said bonds on March 1, 1925, they were extended for a further period of two years at the instance of Jacob Haning, the obligor therein; that at the expiration of said extension period on March 1, 1927, said bonds were again extended in like manner for a further period of one year, and that on both occasions coupons were attached to said bonds to evidence the interest to accrue during said extension periods.

The evidence shows that appellants Albert Winkel and Carl F. Winkel, by Eleanora Winkel, presented for payment at the Farmers National Bank of Pekin, Illinois, the coupons representing the interest due on said bonds 6,306 and 6,307 on the first days of March, 1926, and 1927, and that they received from said bank the interest accrued on said bonds on those dates; that on March 1, 1928, Eleanora Winkel, who was acting for appellants, presented the coupons representing the interest then due on said bonds at the Farmers National Bank, but was informed that the bank had no funds in its possession out of which to pay said interest; that at the suggestion of the assistant cashier of the bank said Eleanora Winkel went to the office of John Fitzgerald, the trustee, a few days after March 1, 1928, and demanded payment of the interest then due on said bonds; that the trustee then paid to Eleanora Winkel the interest on the bonds for the year ending March 1, 1928.

It further appears from the evidence that neither the appellants herein, nor anybody acting for them, had any dealings whatever with the trustee relative to collecting said bonds or any interest thereon prior to the time that Eleanora Winkel called at the trustee's office, and that on that occasion she demanded only the interest then due on said bonds. Appellants

never at any time since they came into possession of said bonds authorized John Fitzgerald, the trustee, either expressly or by implication, to make any collections for them on account of bonds 6,306 or 6,307, or on account of any interest coupons attached thereto, and they never looked to John Fitzgerald for the payment of said bonds or coupons.

It further appears that when the 1920 loan was extended in 1925 and again in 1927, Jacob Haning, the appellee, did not know who held the bonds secured by the trust deed dated March 1, 1920, but did know that John Fitzgerald had not made the loan out of his own funds, but had sold the bonds to various investors. There is abundant evidence in the record to show that neither Albert Winkel nor Carl F. Winkel, nor anyone for them, ever called at the office of John Fitzgerald, the trustee, with reference to the collection of said bonds or any interest thereon, but it affirmatively appears that they presented their 1926, 1927 and 1928 coupons for payment at the Farmers National Bank of Pekin, Illinois, the place of payment designated in said bonds and coupons.

Appellee's own testimony shows that prior to the time he saw the 1920 bonds in Fitzgerald's office in the latter part of June, 1928, he did not know where the bonds were or who held them. When he extended the loan in 1925 he did not know who held the 1920 bonds or any of them, nor did he know who held any of the bonds when he made the second extension for one year about March 1, 1927. He never found out from Mr. Fitzgerald who held the bonds, appellant's Exhibits 1 and 2, but he learned by hearsay that Mr. Winkel held them about a month after Mr. Fitzgerald assigned his property. He looked to Fitzgerald to get the 1920 bonds together and give them to him, and he did not cease to rely on Fitzgerald to do that until about June 15, 1928. When appellee finally got 12 of the bonds from Fitzgerald he did not know where they

came from. He asked Fitzgerald several times who had the other bonds, but Fitzgerald would not tell him.

Relative to the extension made in 1925, appellee was asked the following questions on cross-examination:

Q. "Then he (Fitzgerald) had authority in your behalf to arrange for a two-year extension with the bondholders; is that correct?"

A. "Yes, sir."

The same thing was true in 1927 for the further year. Fitzgerald had authority in appellees' behalf to negotiate or obtain another year's extension on the 1920 loan.

Q. "The manner in which that extension was evidenced was wholly immaterial, wasn't it? The form that the agreement took was wholly immaterial. When you negotiated with Mr. Fitzgerald for a two-year extension on this bond issue in 1925, you didn't care what form the extension agreement took, did you?"

A. "No, sir; I didn't know what kind of an agreement he made with them."

It further appears that in the month of January, 1928, more than five weeks before the maturity of the 1920 bonds, Jacob Haning entered into negotiations with John Fitzgerald, the trustee, the object of which was the paying off of the 1920 loan of $30,000 by means of another loan on the same property for $20,000 and a cash payment of $10,000. These negotiations originated with a letter from John Fitzgerald, the trustee, to Jacob Haning, dated January 19, 1928, which is in words and figures as follows:

"January 19, 1928.

"Mr. Jacob Haning,
    Minier, Illinois.

"Dear Sir:

"The principal of your loan of $30,000 will be due March 1, 1928, and as I have quite a demand for money and the owners of this loan expect payment of same,

will thank you to give me any information as to what you intend to do concerning the principal of this loan.

"Yours respectfully,

"JF:AHN                                   John Fitzgerald."

Pursuant to this letter, Jacob Haning had several conferences with the trustee as to the manner in which a new loan could be negotiated. He testified that he looked to John Fitzgerald to get the old bonds together, meaning the bonds dated March 1, 1920, totaling $30,000, and that there was not the slightest doubt in his mind but that John Fitzgerald would get the bonds together.

The bill alleges that as to the bonds secured by the trust deed of March 1, 1928, the same became due on March 1, 1933, and are payable to bearer at the Farmers National Bank of Pekin, Illinois; that the trust deed securing same was recorded in the recorder's office of Tazewell county on March 1, 1928, and recorded in book 41 of trust deeds, at page 375; that said bonds are negotiable by delivery and that the complainants do not know and are unable to learn the name or names of the holder or holders, or owner or owners, of said bonds or either of them, etc.; that the owners and holders of said last described bonds have or claim to have some interest in and to the premises involved in these proceedings. It is charged that the release of said trust deed, executed in 1920, the release being executed on August 24, 1928, was made without any authority and was fraudulent and void, and appellants prayed that said release be canceled and held for naught, and that said original trust deed, executed in 1920, to secure the bonds held by appellants, be foreclosed.

To this bill of complaint all of the defendants except Haning and his wife, who executed the two trust deeds, and all of the note and bondholders under both trust deeds have made default and a decree *pro confesso*

has been entered against them. It only remains to determine the equities as they exist between appellants and the appellees Jacob and Emma B. Haning, who executed the trust deeds. We have gone quite fully into the facts in this case in order to show that Fitzgerald, the trustee, at no time acted as the agent for appellants in any of these transactions, other than as trustee of the lands to secure the payment of appellants' bonds, and even as to Fitzgerald, trustee, a decree of default has been entered and it stands as a decree *pro confesso* as to all the charges of the bill of complaint. The notes or bonds, with the interest thereon, were all payable at the Farmers National Bank at Pekin. Appellees paid no moneys to this bank but made all payments directly to John Fitzgerald, trustee, and while it is true that the bank paid interest coupons connected with this loan, the bank, of which Fitzgerald was a director, later collected the coupons from Fitzgerald.

Fitzgerald acted as agent for the appellees in procuring two extensions and when appellees undertook to pay off the original trust deed notes or bonds, of which appellants held two, the funds in the entirety were turned over to Fitzgerald in place of the bank and appellees violated the terms of the trust deed and bonds in so doing. Fitzgerald, trustee, was the paid employee of appellees in securing the original loan and in securing the second loan March 1, 1928, to meet the first loan, and they left the whole matter to Fitzgerald, trustee, as their agent to procure the funds and to make payment of and take up the notes or bonds. Appellee Haning paid Fitzgerald for securing extensions. Haning never received the 12 bonds taken up by Fitzgerald on the first loan until late in June, 1928, and Haning knew at that time that there were still two bonds not in. Haning repeatedly went to Fitzgerald and urged him to release the trust deed,

knowing at the time that appellant's bonds had not been taken up, and finally, after the marginal release had been executed by Fitzgerald, Haning was called into the recorder's office at Pekin to look it over and was assured it was a good release. Appellee's insistence and urging under the proofs in this case contributed as much to the execution of this fraudulent release as Fitzgerald's weakness. Appellee .Haning employed Fitzgerald to do all of his business in connection with these loans, employed Fitzgerald to pay his interest and principal in violation of the terms of the contract, and even paid him commissions to assist in appellants' undoing. Nothing in this record shows even negligence on the part of appellants.. There is little occasion for citing authority as applicable to the facts in this case. Appellees executed $20,000 in bonds payable to bearer and a trust deed to Fitzgerald as trustee on March 1, 1928, and, for all this record shows, Fitzgerald may still have all these notes or bonds, secured for no consideration. Fitzgerald produced $14,000 of the old 1920 bonds and turned them over to appellee. These likely were secured by an exchange of the new bonds. If so, Fitzgerald has $6,000 of the new issue made March 1, 1928, for which he paid no consideration; or if he negotiated them or any part of them prior to August 24, 1928, the purchaser took them, with notice on the record that they were secured by a second mortgage at that time and were not secured by a first lien.

Appellees procured Fitzgerald as a witness in their behalf in this suit, but they did not permit him to testify to any fact as to the disposal of the $6,000 of the 1928 bonds. He did corroborate appellee Haning as to his employment by Haning in the several transactions. In equity, a release, unauthorized by the terms of the trust or by the *cestui que trust,* will have no effect upon the deed of trust as between the original

parties or as to subsequent purchasers with notice. (*Mann v. Jummel,* 183 Ill. 523, 532; *Barbour v. Scottish-American Mortgage Co.,* 102 Ill. 121; *Stiger v. Bent,* 111 Ill. 328; *Connecticut General Life Ins. Co. v. Eldredge,* 102 U. S. 545; *Williams v. Jackson,* 107 U. S. 478; *Kennell v. Herbert,* 342 Ill. 464, 469.) In *Kennell v. Herbert, supra,* the court held: ''If one pays to the trustee named in a trust deed the debt secured thereby before maturity which the trustee is not authorized to receive, and the trustee releases the trust deed but does not have possession of the notes, which are owned by and in the possession of a third party, the person so paying is chargeable with notice of the trustee's want of power to receive payment. The inference of authority to receive payment arises from the possession of the trust deed and notes by the person to whom the payment is made, the inference of authority is founded upon such possession, and it does not exist without such possession. (*Fortune v. Stockton,* 182 Ill. 454; *Stiger v. Bent,* 111 id. 328; *Cooley v. Willard,* 34 id. 68; 1 Am. & Eng. Ency. of Law, 1026.) In equity, a release by the trustee, unauthorized by the terms of the trust deed or by the *cestui que trust,* will have no effect upon the trust deed as between the original parties or subsequent purchasers with notice. (*Conner v. Wahl,* 330 Ill. 136; *Vogel v. Troy,* 232 id. 481; *Havighorst v. Bowen,* 214 id. 90; *Lennartz v. Quilty,* 191 id. 174; *Ogle v. Turpin,* 102 id. 148.) Where the release is executed by the trustee after the indebtedness is past due, in the absence of evidence of notice to subsequent purchasers such subsequent purchasers will be protected. *Mann v. Jummel,* 183 Ill. 523.''

Where one of two innocent persons must suffer loss by reason of the fraud or wrong conduct of another, the loss must fall on him who put it in the power of the wrongdoer to commit the wrong. *Connor v. Wahl,* 330 Ill. 136, 146. Even if it be conceded that appellee

Haning is not equally guilty with Fitzgerald in the release of the first trust deed, appellee Haning made it possible for Fitzgerald to release the trust deed by turning all the funds over to him and then urging him to release the trust deed when he knew appellants' notes were unpaid. Appellees contend that by the terms of the trust deed the trustee, John Fitzgerald, was authorized to receive payment of the mortgage indebtedness *at and after the maturity* of the mortgage bonds and to execute the release on the margin of the record of said mortgage deed. No such power is granted expressly or impliedly in the instrument. There is no rule or construction of law that sanctions such a procedure as between the original parties to the instrument, except express power is granted. "Where a trustee releases a trust deed and receives payment of the debt without actual authority and without producing the securities, the party paying has notice of the want of power in the trustee. (*Cooley v. Willard*, 34 Ill. 68; *Stiger v. Bent*, 111 id. 328.)" *Fortune v. Stockton*, 182 Ill. 454, 462.

In *Ware v. Schintz*, 190 Ill. 189, 193, it is held: "The fee title held by the mortgagee is in the nature of a base or determinable fee. The term of its existence is measured by that of the mortgage debt. When the latter is paid or becomes barred by the Statute of Limitations the mortgagee's title is extinguished by operation of law. (*Pollock v. Maison*, 41 Ill. 516; *Harris v. Mills*, 28 id. 44; *Gibson v. Rees*, 50 id. 383; *Barrett v. Hinckley*, 124 id. 32; *Lightcap v. Bradley*, 186 id. 510.) Until it is extinguished the legal title is in the mortgagee for the purpose of obtaining satisfaction of his debt."

The trustee, in a deed of trust to secure incumbrances, has no implied power to receive payment of the debt. (*Cooley v. Willard, supra; Stiger v. Bent*, 111 Ill. 338; *Kransz v. Uedelhofen*, 193 Ill. 477, 490;

*Ortmeier v. Ivory,* 208 Ill. 581; *Campbell v. Gowans,* 35 Utah 268, 23 L. R. A. (N. S.) 414 and note; *Kennell v. Herbert,* 342 Ill. 464, 468 and 469.) The burden is upon appellees to show agency by the trustee, Fitzgerald, to collect moneys for appellants. (*Chesley v. Woods Motor Vehicle Co.,* 147 Ill. App. 588; *Gallagher & Speck v. Chicago Title & Trust Co.,* 238 Ill. App. 39.)

A great many questions are argued in the briefs that have no bearing upon the equities of the parties. This suit in this court involves only the parties to the first trust deed and bonds. The proofs submitted fully and completely substantiate the allegations of the bill of complaint and the decree of the circuit court of Tazewell county should be and is reversed and the cause remanded to the circuit court of Tazewell county with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded with directions.*

On petition for rehearing opinion modified and adhered to.