John J. Doyle and John T. Fleming, Appellants, v. Bion H. Barnard et al. (John Coughlin et al.), Appellees.

Gen. No. 8,671.

Opinion filed September 20, 1933.

ROBERT L. KEMLER, for appellants.

ALSCHULER, PUTNAM, FLANNIGEN & JOHNSON, for appellees; W. C. O'BRIEN and EDWARD F. STREIT, of counsel.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This was a proceeding in chancery to set aside a release deed, which had been executed by a trustee, and to foreclose the trust deed and two of the notes secured thereby. The facts are as follows: On August 24, 1931, Bion H. Barnard executed a trust deed together with four notes marked "A," "B," "C," and "D," note "A" being for $1,000, and notes "B," "C" and "D" for $500 each. The trust deed and notes were in favor of one J. B. Magruder. The trust deed was given upon certain residence property in the City of Aurora. The First National Bank of Aurora was named as trustee with provision that upon its failure or refusal to act, the person who was the acting recorder of deeds of said Kane county should be the successor in trust. The trust deed was recorded in the recorder's office of said county on August 25, 1931, by Charles Doetschman, recorder.

The appellants herein, John J. Doyle and John T. Fleming, both reside in the City of Chicago. On September 22, 1931, they sold or traded to the said Magruder an automobile and he delivered to them notes "B" and "C" for payment, or part payment, therefor. Each of these notes was in the sum of $500. Some time subsequent to this transaction, Magruder and Barnard issued two additional notes, marked "B" and "C" to take the place of the two that had been negotiated to the appellants. The new notes were identical in substance and form with the two notes traded appellants.

Magruder went to the First National Bank of Aurora in the latter part of 1931, and requested Mr. Dillenburg, who was the trust officer of said bank, to execute a release for the trust deed involved herein. The trust officer of the bank did not know Magruder and did not find that this transaction was noted upon the records of the bank or that the bank had accepted such appointment, and refused to act. He then wrote a letter, addressed to the recorder's office of said county, advising the recorder that the bank refused to act in this matter. Subsequent to this, Magruder and Barnard appeared in the office of the recorder of deeds of Kane county, and Magruder had in his possession the aforesaid trust deed and the four notes marked "A," "B," "C" and "D" answering the description as set out in the trust deed, and delivered these to the recorder and requested that a release be issued for the trust deed. Magruder marked the trust deed and each note, "Cancelled and paid," upon its face, signed his name thereon, and stated that he was the owner of the notes at that time. The comparison of the notes and trust deed was made and the cancellation examined, whereupon a release deed was duly executed.

Following this, Magruder effected a sale of said premises to John Coughlin and wife, appellees. Coughlin and wife employed Charles McNett, an attorney at law who has practiced in the City of Aurora for more than 40 years, has been master in chancery, was at that time attorney for a building and loan association, and who had had experience in the transfer of real estate and in the execution and release of mortgages, and with the examination of abstracts and titles, to represent them in this transaction. The evidence shows that their attorney examined the abstract of title, the canceled trust deed and notes and the release deed as made and recorded.

After these matters had been attended to by the attorney, and after Magruder, Barnard, and Coughlin had met at his office, and he had advised Coughlin that the title was clear, Coughlin thereupon paid $2,500 to Magruder in the office of the attorney, Charles McNett, and received from Magruder a deed to said property, which was promptly recorded. The deed to Coughlin was made on November 9, 1931. After this transaction, Magruder and Barnard absconded.

It does not appear in the evidence when appellants became cognizant of the transaction above referred to, with reference to the release of the trust deed and the purchase of the property by the appellees. The appellants brought their bill to the September term, 1932, of the circuit court of Kane county, seeking to have the release deed declared void as against them; and the amount due them upon their notes decreed a prior lien upon said premises; and that the premises be sold under the trust deed to satisfy the liens, attorney fees and costs of the appellants. The trial court dismissed appellants' bill for want of equity, from which decree appellants prosecute this appeal.

Appellants urge for reversal that the trust deed was sufficient to put appellees upon notice. They further urge that notes "B" and "C" were different from notes "A" and "D"; that the release deed was not executed by anyone authorized to do so; and that the court heard improper testimony. Appellants rely upon the case of *Kennell v. Herbert,* 342 Ill. 464. There are many distinguishing differences between this case and the one above relied upon by appellants.

In the *Kennell* case, Kennell filed his bill against Herbert, and others, to foreclose a trust deed. Herbert and wife had secured a loan from a copartnership, consisting of Sam T. Peterson, Walter C. Rippberger and Sophia Rippberger, doing business as Charles Rippberger Company. Herbert and wife executed their trust deed and four notes for the loan from Ripp-

berger Company. The trust deed described the notes, amounts, when payable, and made Peterson trustee.

Subsequent to this, Herbert and wife undertook to convey the incumbered property to one Kruse. An abstract of title was delivered to Kruse, and upon being examined by his attorney, disclosed the trust deed standing against the property. Herbert went to see Peterson, who was named in the trust deed as trustee, and Peterson stated to Herbert that he would not release the trust deed unless Herbert paid the balance of the money due thereon, or executed a trust deed on other property. Thereupon Herbert executed a trust deed on other property to Peterson as trustee, and Peterson executed a release deed to the property in question, and delivered the release deed to Herbert, who in turn delivered it to the attorney for Kruse, in whose hands it remained for about four years before it was filed for record.

At the time Herbert executed the second trust deed to Peterson, Peterson told Herbert that he did not have the trust deed and notes to the property being traded, but promised to get them and either deliver them to Herbert or destroy them. Herbert and wife conveyed the property to Kruse and wife. Kennell was the owner of the trust deed and notes upon the property first conveyed by Herbert and wife to Peterson, and now being conveyed to Kruse. Kennell had no knowledge that a release of said trust deed had been made by Peterson. He continued to receive the interest money upon the notes, as it became due, from Peterson, by checks upon the Rippberger Company.

After the notes became due, Kennell made several demands upon Peterson, the trustee, and Rippberger, at the Rippberger Company Office, for the payment of his notes, under his trust deed. The court states on page 468 of its opinion that the sole question in that case was the validity of the release of the trust deed by Peterson, as trustee. It will be observed that in the

above case the trustee did not have possession of the trust deed or of the notes secured thereby, and that they were at all times in the actual possession of Kennell; and that the trustee executed the release without having such possession, and without any notice of such release being given Kennell.

The court further states on page 469 of its opinion: "If one pays to the trustee named in a trust deed the debt secured thereby before maturity which the trustee is not authorized to receive, and the trustee releases the trust deed but does not have possession of the notes, which are owned by and in the possession of a third party, the person so paying is chargeable with notice of the trustee's want of power to receive payment." And further, "The inference of authority to receive payment arises from the possession of the trust deed and notes by the person to whom the payment is made, the inference of authority is founded upon such possession, and it does not exist without such possession."

Kennell became the owner of the trust deed and notes immediately after their execution, and held the same continuously thereafter in his possession. The release of the trust deed, which the trustee undertook to make, was not recorded until about four years after its execution. The trustee did not have authority to receive the principal prior to maturity, without the consent of the owner and holder of the notes and trust deed. The court held that the release of the trust deed as between Kennell and Herbert was invalid, because when Herbert went to see Peterson about the matter, and delivered to Peterson a trust deed on other property, Peterson told Herbert he did not have the trust deed and notes on the property about to be conveyed by Herbert, but promised to secure them; and the court holds that these facts were sufficient to put Herbert upon inquiry.

The court also held that the release made by Peterson was invalid as between Kennell, who held the trust deed and notes, and Kruse, who had purchased the property from Herbert, because when Kruse had his attorney examine the abstract of title to the property which he was about to buy from Herbert, he was advised by his attorney of the existence of the trust deed and notes and he went ahead with the purchase of the property from Herbert upon securing from the trustee a mere release of the trust deed, without the surrender of the notes or trust deed. The attorney advised that the release was necessary, but paid no attention to the question of the surrender of the trust deed and notes. The court held that this was a warning to Kruse and that a mere release of the trust deed without the surrender of the notes might not be sufficient. The court held that Kruse occupied no better position than Herbert and that the release was invalid as between them and Kennell, holding that when Kruse purchased the property, knowing there was a trust deed and notes against it, and accepted a bare release of the trust deed without also requiring a surrender of the notes, he did so at his own peril.

We do not believe that the facts in the above case are parallel to the facts existing in the present case. In this case, Magruder, the holder of the trust deed and notes, appeared before the trustee in person with the trust deed and notes in his possession, and advised the trustee that full payment had been received by him and instructed the trustee to make and issue a release deed.

The trust deed and the notes were executed in favor of Magruder, and the trustee had no information that Magruder was not still the true legal holder of all of said notes. It is true that two of the notes then in possession of Magruder were spurious, but they bore the genuine signature of Barnard, and they fit the

description as set out in the trust deed; thus there was no way in which the trustee could detect that the notes were spurious.

Appellants complain that the two spurious notes had the blank spaces filled in with a typewriter with type different from that used in the other two notes. It appears upon examination of the original instruments that the type of the typewriter used in filling out the two spurious notes was slightly smaller than that of the typewriter used to fill in the two original notes, but the type was the same style and same form, and the evidence shows that the difference in the size was so slight that it was not noticeable except upon the closest inspection made for the purpose of determining that one thing. Notes and papers relative to a transaction are not always prepared upon the same typewriter or by the same person. The signatures of Barnard were genuine on each of the four notes delivered by Magruder to the then acting trustee, the recorder of Kane county.

We find nothing in the evidence to put the recorder upon inquiry or in any way to arouse his suspicion. Neither do we find anything in the evidence to put the appellees, Coughlins, or their attorney, upon inquiry or suspicion. The attorney testified that he discovered from the abstract that the trust deed and notes had issued upon said property, and that he examined the same as delivered to him marked "Paid and cancelled," by the *cestui que trust* himself; that he examined the notes; that he examined the release deed by the county recorder; that he found everything in order and that the instruments were recorded, and the transaction was closed.

The facts in the case now before this court are very similar to those in the case of *Vogel v. Troy*, 232 Ill. 481. In the *Vogel* case, one Hulda Vogel was the owner of a $2,000 note, secured by a trust deed of certain real estate, which trust deed and note had been

issued by Emeline Troy and her sons. John Pfeiffer was named as trustee in the trust deed. Hulda Vogel held the note, but Pfeiffer retained possession of the trust deed.

Subsequent to this transaction, the property was sold to Elizabeth Lighthall and a warranty deed made to her by the Troy family for said premises. Mrs. Lighthall knew there were certain incumbrances upon the property and understood that they were to be paid from the purchase money advanced by her.

The trustee, Pfeiffer, told the Troys that the original $2,000 note had been lost and had them execute to him a new one, which corresponded substantially to the old one. The trustee then executed a release deed from himself to the Troys for the $2,000 loan under the trust deed, and the abstract was brought down to date, showing the title to be free and clear of the said incumbrance.

The purchase money had been deposited by Mrs. Lighthall with the Chicago Title & Trust Company. The trustee, Pfeiffer, represented to the agents of Mrs. Lighthall that he was the owner of the $2,000 note and upon payment of the same, the spurious note which he had secured from the Troys and the trust deed were canceled and surrendered and the release deed was executed; and Pfeiffer converted the $2,000 to his own use.

The court in that case recognized the rule in equity that a release unauthorized by the terms of the trust deed or without the consent of the *cestui que trust* will have no effect as between the original parties or as to subsequent purchasers with notice. It was urged in that case that Mrs. Lighthall had notice that Hulda Vogel was the owner of the $2,000 note, or notice of sufficient facts to put her upon inquiry, which, if investigated, would have disclosed that the trustee, Pfeiffer, was not the true owner of the indebtedness

secured by the trust deed, and that therefore he had no right to release the same.

In support of this, it appeared that Mrs. Troy had told Mrs. Lighthall that there were two incumbrances upon the property—one for $1,000, and one for $2,000. The trust deed ran to John Pfeiffer. The abstract of title for the premises in no way disclosed that Hulda Vogel had any interest in the indebtedness described in the trust deed. Pfeiffer had in his possession the original trust deed and a $2,000 note, which bore the genuine signatures of the Troys and substantially corresponded with the note described in the trust deed. Mrs. Lighthall did not rely upon herself to close the deal, but relied upon one Lang, an experienced real estate man, and the Chicago Title & Trust Company.

Following a detail of the above facts, the court in that opinion stated: ''Mrs. Lighthall or her agents were only required to do what a reasonably prudent person would have done under like circumstances to ascertain whether there was any infirmity in the release of Pfeiffer.'' It is further stated that John Pfeiffer was trustee and that Hulda Vogel had ''failed in any way to place anything of record which showed that she had any interest in the indebtedness secured by said trust deed, and it seems apparent that Mrs. Lighthall did all she reasonably could do to protect herself from the secret lien of Hulda Vogel at the time she purchased said property.'' It is further stated: ''And Pfeiffer appeared, at the time the deal was closed, with the original trust deed, and what apparently was the original $2,000 note and interest notes, in his possession and claimed to own them. The loss caused by the misconduct of John Pfeiffer must be borne either by Hulda Vogel or by Mrs. Lighthall, and we think it clear Mrs. Lighthall acted in the utmost good faith and did all that a reasonably prudent person could do to secure a perfect title to said premises at the time she purchased the same, and that her rights

are superior to those of Hulda Vogel and should be protected.''

Another point urged in the *Vogel* case for reversal is set out in the opinion as follows: ''It is urged that the notes did not correspond with the notes described in the trust deed. There was a difference between the two series of notes in this: that the last series was signed by the wives of Harry L. and Ernest G. Troy, which was not the case with the first series, and three of the interest notes were not correctly dated. The notes presented by Pfeiffer corresponded substantially with the notes described in the trust deed. They were presented by Pfeiffer with the original trust deed and as the notes described in that trust deed. Mrs. Lighthall and her agents, who were experienced business men, acted upon the theory that they were the original notes of the Troys, and in so doing did what we think a reasonably prudent business man would have ordinarily done under the same circumstances. The scheme of Pfeiffer was one well calculated to deceive, and we think Mrs. Lighthall took every precaution to protect her rights. In *Lennartz v. Quilty, supra,* on page 180, it is said: 'The recording laws are designed to afford protection to parties acting in good faith and relying upon them, and in the absence of any notice or ground of suspicion it is not the duty of a purchaser to obtain an admission of payment from the holder of a note secured by a trust deed regularly released of record.' ''

After a careful examination of the facts in the case before us, and in considering the same with respect to the facts that existed in the above *Vogel* case, we are of the opinion that the facts in the *Vogel* case and the facts in this case are very similar, and that the rules of law as applied in the *Vogel* case are applicable and should apply to the case at bar.

The appellees, Coughlins, did everything a reasonably prudent person could be called upon to do to protect their rights and interests at the time of the pur-

chase of the property in question. They employed an experienced attorney of over 40 years' practice, who gave the greater part of his time to transactions of this nature and character, and the record title to this property appeared clear and free of any lien or incumbrance because of the trust deed that had been executed by the said Barnard to the said Magruder.

We find nothing from the evidence about the transaction in securing the release of the trust deed from the recorder of Kane county to in any way arouse the suspicion of said recorder. The signatures to the spurious notes were genuine and the notes corresponded to the notes originally issued, except for a slightly smaller type, but there were four notes and no reason to believe that each note was to have been written upon the same typewriter.

Nothing appeared at any place in the transaction to give the appellees, Coughlins, any notice that appellants held any notes secured by this trust deed. A purchaser of real estate should be able to rely upon a clear and regular title of record and should be protected therein, as against all secret adverse titles or liens, of which he had no notice. It has been held that mere assignment of notes secured by mortgage will not protect the assignee of such notes against persons who have acquired clear record title without notice of such assignment; and that an assignee of notes secured by mortgage may protect his equitable lien on the mortgaged premises, by taking and putting upon record an assignment, so as to give notice of his interest. *Ogle v. Turpin,* 102 Ill. 148.

We do not believe the rule as urged by appellants for the reversal of this case should be extended to the appellees, who acted in a careful and prudent manner, employed a capable and experienced attorney, and who completed the transaction without notice of any infirmity to put them upon inquiry.

Appellants make complaint regarding admission of certain testimony, but in cases of this nature it will be presumed that the court considered only competent evidence. *Tunison v. Chamblin,* 88 Ill. 378.

It amply appears from the evidence that appellees, Coughlins, acted in entire good faith and paid their money relying upon the public records of Kane county, which showed the payment of the indebtedness and discharge of the lien. There was nothing irregular in the acts of the trustee, and nothing occurred to put the Coughlins upon inquiry or notice of any outstanding claims whatsoever, against the property that was purchased.

Finding no reversible error in the record, the judgment of the circuit court is affirmed.

*Judgment affirmed.*