Idah Culhane and Ernest C. Stokburger, Trustee, Appellees, v. Arthur Layman et al., Appellants.

Gen. No. 8,718.

Opinion filed February 19, 1934.

WILLIAM L. PIERCE, for appellants.

HINCHCLIFF, MILLER & THOMAS, for appellees; CHARLES A. THOMAS, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

This is a suit filed by appellees to foreclose a trust deed executed by Arthur Layman and Anna Layman, his wife, to secure the payment of a note for the sum of $2,500, payable to the order of themselves, three years after date, with six per cent interest, payable semiannually, both principal and interest being pay-

able at the office of the E. C. Stokburger Agency in Rockford. The original trust deed and note were dated May 19, 1924, and Ernest C. Stokburger was named as trustee therein. From a decree of foreclosure and sale rendered in favor of complainants below, appellees here, the record is brought to this court for review by the defendants below, appellants here.

It appears from the evidence that Ernest C. Stokburger, in 1924, had an office in the Forest City Bank Building in Rockford, and styled himself a realtor and mortgage broker, doing business under the name of the E. C. Stokburger Agency. On May 19, 1924, appellants borrowed from him $2,500 and executed the note and trust deed referred to. In April, 1926, appellee, Idah Culhane, acting through her agent and representative, E. P. Barrett, a real estate agent, purchased this note and trust deed from Stokburger, and from that time she has had possession of the note, trust deed and abstract of title. On May 19, 1927, an extension agreement was executed by appellants and the trustee, extending the time of payment for two years. On May 18, 1929, appellants paid Stokburger $1,000 and another extension was executed extending the time of payment for a period of three years from May 19, 1929. On November 18, 1929, appellants paid Stokburger, at his place of business, $400 to apply on this note and on May 20, 1930, the further sum of $100. Appellants regularly paid the interest to Stokburger, as the interest became due, including the interest payment due November 18, 1931. Thereafter, and prior to the 19th of May, 1932, Stokburger disappeared and his agency office closed. After appellee became the owner of the note in 1926 and until Stokburger absconded, he, Stokburger, would send the interest payments to Barrett and Barrett in turn would send them to Dr. Culhane, husband of appellee Idah Culhane, who acted as her agent. When the $1,000 on the prin-

cipal was paid in May, 1929, that amount was sent by Stokburger to Barrett and by Barrett to Dr. Culhane, but Stokburger converted to his own use the $500 subsequently paid by appellants, and neither Barrett or the Culhanes knew anything of these payments until after Stokburger left. After this $500 was paid on the principal sum, Stokburger continued to send to Barrett, upon the respective interest dates, the interest on the full $1,500.

The master found from the foregoing evidence that there was a course of dealing on the part of appellee by which appellants were led to believe that Stokburger was at all times the owner and holder of the note and trust deed, and that by reason thereof, appellants were justified in making the principal payments to Stokburger, who, in receiving the same, acted as agent for appellee. Objections to the master's findings having been overruled, they were renewed as exceptions, and sustained by the court, and a decree of foreclosure and sale rendered in accordance with the prayer of the amended bill.

The only issue in this case is whether or not these two payments, aggregating $500, made by appellants to Stokburger, constituted payment to appellee, Mrs. Culhane.

It is earnestly insisted by counsel for appellants that appellee, Mrs. Culhane, by her course of conduct, impliedly created Stokburger her agent, and is now estopped from denying Stokburger's authority to receive these principal payments, and directs our attention to the fact that the note provided that both the principal and interest thereon were payable at the office of the Stokburger agency and that on the back of the note appeared this indorsement: ''The Stokburger Agency invests its own money in all its loans, which is evidence of its faith in the Trust Deeds offered you. Since 1906 not a dollar has been lost on

a Stokburger Loan.'' Counsel also directs our attention to the fact that both extension agreements recite that the principal note and trust deed ''are now owned and held by Ernest C. Stokburger, trustee'' and to the further fact that the principal payment of $1,000 was paid to Stokburger and received by appellee, who thereby ratified appellants' action in so paying Stokburger. And in this connection, appellants direct our attention to the cases of *Linowiecki v. Wisniewski*, 249 Ill. App. 474, and *King v. Harpster*, 306 Ill. 202, and insist that these cases support their contention.

In the *Linowiecki* case, it appeared that the defendants executed a series of 20 notes, secured by a trust deed, in which the defendants were grantors and Max Weber was named as trustee. The notes were payable to the order of the makers and indorsed by them and were identical except as to the amounts therein stated and the dates payable, and each of said notes was made payable at the office of Weber & Weber, of which Max Weber, the trustee, was a member. As 10 of the notes became due, they were paid by defendants at the office of Weber & Weber. On January 15, 1924, the trustee sold the last 10 notes of the series to the plaintiff, and they were delivered to the plaintiff, who retained them in his possession. As each of these last 10 notes became due, the plaintiff presented them at the office of Weber & Weber and permitted them to accept the money due thereon, and then Weber & Weber would take the money so received from the defendants to the plaintiff, and the plaintiff thereupon delivered the note to them, and they, in turn, forwarded the note to the defendants. On January 31, 1925, the defendants paid the last note at the office of Weber & Weber and Max Weber, the trustee, released the trust deed. Having failed to turn over to the plaintiff the amount collected on January 31, 1925, the plaintiff obtained a judgment by confession against

them, which was, after a hearing, vacated and set aside. In affirming the judgment of the trial court, the Appellate Court said: ''The original loan, for which the trust deed was given as security, was made at the office of Weber & Weber, which was a firm engaged in the real estate and loan business, and the notes were made payable at the office of that firm. These facts, standing alone, might not be sufficient to authorize Weber & Weber to make collections on these notes, but the fact is to be considered together with all the other facts and circumstances of the case. An agent authorized to make a transaction is not necessarily authorized to collect by reason thereof, and a person paying a note, except to the owner, ordinarily does so at his peril. The holder and owner of a note, however, may by his conduct impliedly create an agency, and it is not necessary that the agency be constituted by a direct authorization.'' The opinion then quotes an excerpt from the opinion in the case of *James v. Conklin & Hill,* 158 Ill. App. 640, and continues, ''From the facts in this case it is apparent that not only were the notes made payable on their face at the office of Weber & Weber, but that plaintiff had allowed and permitted the nine notes previously due to be paid at that office and accepted by Weber & Weber, and, himself, turned over said notes to Weber & Weber for delivery to the defendants. There was nothing different in the course of conduct in regard to these nine previous notes than there was to note No. 20, except that Weber & Weber failed to remit to the holder of the note the money collected by him for its payment. The notes were to bearer and, while it might have been possible for the makers of said notes to have discovered by inquiry who the owner was, the makers also had the right to rely upon the course of conduct of the owner of the notes in permitting them to pay at the place named in the notes, without objec-

tion. On the other hand, if the payee did not desire the collection to be made by Weber & Weber, he had ample opportunity to have notified the makers of said notes that they should be paid to him directly and not through an intermediate person or agency. Moreover, the plaintiff, by his course of conduct, had agreed to the payment of the notes, without their production, at the office of Weber & Weber by the defendants, as it appears from his own testimony that he would not deliver the notes until he had first received the money and, for that reason apparently, would not deposit them with that firm.'' In the *Linowiecki* case, the conduct of the plaintiff in permitting Weber & Weber to make collections upon nine similar notes at their respective maturities and his course of conduct in turning over to Weber & Weber these nine principal notes for delivery to the defendant, together with the fact that the loan was originally made by Weber & Weber and all the notes were expressly made payable at the office of that firm, created Weber & Weber an agency for the purpose of collecting the tenth note. In the instant case, Stokburger never had possession of the note or the trust deed. Appellee, Mrs. Culhane, at all times retained possession of them, and never turned over to Stokburger any note, principal or interest, at any time. True, appellants did pay $1,000 upon the principal sum of $2,500 at the time of the maturity of that obligation, and this was paid Mrs. Culhane, but at that time the principal was extended and it was before the maturity of the note, as so extended, that these two payments aggregating $500 were made. The *Linowiecki* case is clearly distinguishable from the instant case.

An examination of the case of *King v. Harpster,* 306 Ill. 202, discloses that King, on January 17, 1909, borrowed $2,500 from Rice, and as evidence thereof he and his wife executed a note for that sum, payable

to the order of themselves and due January 1, 1914, which they indorsed and delivered to Rice. To secure the payment of this note, they executed a trust deed on their farm to Rice as trustee. Mrs. Augusta Miller owned and had possession of this note and trust deed and Rice himself had no interest therein. On December 9, 1912, King sold to Harpster a portion of the land covered by the trust deed for $2,000 and executed a deed therefor, leaving the deed with Rice to be delivered to Harpster upon the payment of the consideration therefor. At the time King and his wife executed the deed to Harpster, they executed a new trust deed to Rice as trustee on the remaining portion of the farm not sold to Harpster to secure the payment of a note for $900. Of this amount $500 was to be applied with the $2,000 to be paid by Harpster and the trust deed of $2,500 was to be thereby satisfied. The remaining $400 was paid to King. On December 17, 1912, Harpster went to Rice's office and gave him a check for $2,000, payable to him as trustee. Rice thereupon executed a release for the portion of the farm sold to Harpster. Mrs. Miller retained her note and trust deed, but finally left it with the State National Bank of Mattoon for collection. On January 13, 1913, Rice, who was a customer of that bank, gave to the bank his individual note for $2,500 and as collateral security therefor lodged with the bank the $900 note and trust deed and the $2,500 note and mortgage which the bank had received from Mrs. Miller for collection, and in exchange therefor the bank credited Mrs. Miller's account with $2,500. In disposing of this case, the Supreme Court held that the payment of $2,000 by Harpster to Rice was not a payment on the $2,500 note which belonged to Mrs. Miller, and her rights were in no way affected by such payment; that Rice could not have foreclosed the trust deed because he had received the money with

which to pay it; that the bank, in accepting the trust deed as collateral security for Rice's note, acquired no rights which Rice did not possess and since in equity Rice could not foreclose the trust deed, neither could the bank; that as between King, the mortgagor, and Rice, the debt was extinguished and could not have been enforced by Rice against King, and the bank being only Rice's equitable assignee could not enforce it. The holding of the court as announced in the *King* case, so far as applicable to the instant case, is that the payments by appellants to Stokburger of the $500 after the second extension was executed was not a payment on the amount due appellee, Mrs. Culhane, as evidenced by the note which she held. It will be noted that in the *King* case the trustee Rice reacquired the note and trust deed from Mrs. Miller and then pledged them to the bank as collateral security for the obligation which he gave the bank, the proceeds of which Mrs. Miller received in exchange for the note and mortgage she held.

''The owner and holder of notes secured by a trust deed is not bound by unauthorized payments to the trustee before maturity, and the payor is not justified in relying upon representations made by the trustee when the trustee has neither the actual nor implied authority to receive such payments and where the notes are not surrendered but remain in the hands of the owner and holder, who had no knowledge of the payments. If one pays to the trustee named in a trust deed the debt secured thereby before maturity, which the trustee is not authorized to receive, and the trustee releases the trust deed, but does not have possession of the notes, which are owned by and in the possession of a third party, the person so paying is chargeable with notice of the trustee's want of power to receive payment. The inference of authority to receive payment arises from the possession of the

trust deed and notes by the person to whom the payment is made, the inference of authority is founded upon such possession and it does not exist without such possession.'' ''The word 'trustee,' when appended to the name of a payee, is sufficient to charge persons dealing with the trustee with notice of restrictions and limitations on the trustee's power over the instrument. The term is a warning and a declaration to everyone who reads it that the person so named is not the owner of the property to which it relates, that he holds it for the use and benefit of another, and that he has no right to deal with it except in accordance with the terms of the trust.'' *Kennell v. Herbert*, 342 Ill. 464.

It is insisted, however, by counsel for appellants, that appellants are common laboring people and did not know or understand the meaning of the word trustee, but were faithful to every requirement in relation to the payment of interest and the repayment of the principal, were careful to take receipts, and that equity should protect them because they relied in confidence upon the apparent authority of Stokburger, with whom they dealt. It is a doctrine too well known to require the citation of authority that where one of two innocent persons must suffer loss, he, who, by his negligent conduct, made it possible for the loss to occur, must bear it. The difficulty in all cases is to determine whose negligent conduct made the loss possible. In the instant case, appellants executed the trust deed. They conveyed their property to Stokburger as trustee. They executed a negotiable note payable to the order of themselves and indorsed that note. Prior to its maturity, appellee, Mrs. Culhane, became the owner thereof, and continued to own and hold it until the decree in this proceeding was rendered. Appellants never saw the note or trust deed after it was executed. They had confidence in Stok-

burger. They accepted Stokburger's receipt for the money they paid. They knew their note and trust deed were outstanding. They paid their interest promptly and made payments upon principal. If Stokburger was the owner and holder of the note and trust deed, the payments they made were being made to the proper party; if not, they were trusting Stokburger to see to it that the money they paid would be by him paid to the parties rightfully entitled thereto. Not to have informed themselves that Stokburger was the actual owner and holder of the note and mortgage and by turning their money over to him, made it possible for him to practice a gross fraud on the person who actually owned and held the note and trust deed. They knew their note was not due when these payments were made, and in making the payments upon the principal, they acted at their peril. Appellee, Mrs. Culhane, did not expressly make Stokburger her agent to receive any principal payments upon this note and her conduct was not such, as in our opinion, impliedly authorized appellants to make these payments, and by their negligence appellants, having made it possible for this loss to occur, must bear it.

The decree is in consonance with the authorities and must be affirmed.

*Decree affirmed.*