**Alexandra Kozien, Appellant, v. Jozef Vikidal et al., Appellees.**

**Gen. No. 36,790.**

Opinion filed June 20, 1934. Rehearing denied July 9, 1934.

HEILE, CAVENDER, MILCHRIST & KAISER and THEODORE J. SZMERGALSKI, for appellant.

NICHOLAS A. POPE, for appellees; RICHARD E. DOOLEY, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

Complainant, Alexandra Kozien, filed her bill in the superior court of Cook county to foreclose a trust deed given to secure a note for the sum of $6,000, dated May 30, 1928, due and payable three years after the date thereof, with interest at the rate of seven per cent per annum, evidenced by interest notes. Both principal and interest notes were made payable at the office of Konrad Ricker who made the loan. The principal note and a trust deed to Konrad Ricker, trustee, together with the interest notes, were executed by the defendants, Jozef Vikidal and Katerina Vikidal, his wife. Defendants filed a plea in which it was alleged that the principal and interest notes had been paid in full to Konrad Ricker, the trustee in the trust deed, who, the plea alleges, was the agent of the legal holder and owner of the trust deed and notes, and authorized and empowered to receive the payments so made for and on behalf of the legal holder and owner of the trust deed and notes, who did not appoint any other place of payment, or request defendants to make payment to her, and that Konrad Ricker, as such trustee in the trust deed, had executed and delivered to the defendants a deed releasing all rights under such trust deed.

The cause was referred to a master on the issues raised by the plea. The master heard the evidence and reported and found that the note for $6,000 remained wholly unpaid and recommended that the plea of

payment be overruled and a decree of foreclosure entered. Upon a hearing on exceptions filed to the master's report, the court sustained the exceptions and entered a decree finding that the note had been paid in full, and dismissed the bill for want of equity.

There seems to be little dispute about the facts in the case. The note for $6,000, secured by the trust deed, was executed, as alleged, and, by its terms, matured on May 30, 1931. The note and trust deed were purchased from Ricker by the complainant in May, 1928. On July 3, 1930, the defendants paid Ricker, the trustee, $3,000, on November 29, 1930, $1,000, and on July 10, 1931, $2,000 on account of principal, the first two payments having been made before the maturity of the note. All instalments of interest were paid by the defendant to Ricker, and by him paid to the complainant. The interest notes were surrendered by the complainant to Ricker upon the receipt of payments thereof from him. The interest was paid to the complainant by Ricker for a year after the note became due, but the complainant had no knowledge of any of the payments having been made on account of the principal. Complainant was in possession and control of the principal note and trust deed during all of the time after they were purchased by her. On June 2, 1932, without knowledge of the complainant, Ricker executed and delivered to defendants a release deed, releasing the lien of the trust deed. This deed was recorded by Ricker. Complainant and defendants never met until after all of the payments had been made to Ricker. It is the contention of the complainant that Ricker had no authority to receive payment of any part of the principal of the $6,000 note secured by the trust deed, or to release the trust deed. It is the contention of defendants that Ricker was the agent of the complainant in making the collections and that payment of the money to Ricker constituted payment of

the notes, and that complainant was negligent in that she did not, after the purchase of the trust deed and notes, give notice to the defendants that she had made such purchase and give defendants direction as to future payments.

There was no answer filed to the bill here. Defendants' plea is "that such payments made by the defendants were made to Ricker, who was then and there the agent of the legal holder and owner of the trust deed and notes, and who was then and there authorized and empowered to receive for and on behalf of the legal holder and owner of the said trust deed and notes the aforesaid payments made by the defendants, who did not appoint any other place of payment; that the complainant never informed or requested defendants to make their payments at any other place, and that the defendants received their interest coupons marked paid by said Konrad Ricker at his office; that in and by said release deed and payments, said indebtedness sued upon by complainant is wholly paid, discharged and satisfied."

In *Straley v. House of Good Shepherd*, 281 Ill. 604, the Supreme Court said concerning a plea to a bill in chancery: "In order to be a good plea it must be either an allegation or a denial of some leading fact, or of matters which, taken collectively, make out some general fact which is a complete defense. (Story's Eq. Pl.—10th ed.—sec. 652.)"

In *Spangler v. Spangler*, 19 Ill. App. 28, this court said: "A plea to a bill in chancery is proper whenever the defendant wishes to reduce the cause, or some part of it, to a single point, and from thence to create a bar to the suit. Smith's Chancery Practice, Vol. 1, page 216; Story's Equity Pleading, sec. 652. Pleas in chancery are pure pleas and pleas not pure. Pleas not pure are sometimes called negative pleas— Ibid. Sec. 651. It was formerly doubted whether a

purely negative plea was a legitimate mode of defense
in equity; but that doubt has been dissipated, and it is
now firmly established that such a plea is good—Ibid.
668. In sec. 652, *supra,* the author says: 'The true
end of a plea is to save to the parties the expense of
an examination of witnesses at large.' ''

Defendants cite the case of *McAuliffe v. Reuter,*
166 Ill. 491, and many other cases as authority for
the proposition that an assignment of a chose in action,
other than a negotiable instrument, does not protect
the assignee as against the equities between the orig-
inal parties, without notice of the assignment to the
debtor, and that in the event of a foreclosure by the
assignee of a trust deed without such notice the mort-
gagor may interpose any defense arising out of the
transaction with the mortgagee which he could set up
against the mortgagee in case the bill were filed by
the mortgagee. In *McAuliffe v. Reuter, supra,* Mc-
Auliffe had borrowed $600 from one Niehoff, giving a
mortgage on real estate as security, and had paid the
debt in instalments which were entered in a passbook,
and when the debt was paid, the note and mortgage
were returned to McAuliffe. Thereafter, McAuliffe
borrowed a further sum of $1,000 from Niehoff, evi-
denced by a note for that amount due in three years
from date, payable to McAuliffe and indorsed by him
in blank. McAuliffe at the same time and in the same
manner executed six interest notes payable semian-
nually and delivered all of them to Niehoff, together
with a trust deed on his home, such trust deed being
made to secure the loan, in which Niehoff was named
as trustee. McAuliffe and Niehoff had an agreement
that McAuliffe should pay this loan in instalments
in the same manner as the $600 loan had been paid.
Niehoff was a private banker, and as McAuliffe made
his instalment payments at Niehoff's bank, these pay-
ments were not credited on McAuliffe's note, but were

entered to McAuliffe's credit in a passbook which he carried. The evidence in that case indicated that neither McAuliffe nor certain members of his family, who at times made these payments, ever saw the note or mortgage at the time the payments were made. It developed that shortly after the note and mortgage had been given to Niehoff, Niehoff had sold and delivered them to Reuter, who filed the bill to foreclose the mortgage. A decree was entered ordering the property sold, which decree was affirmed in the Appellate Court. From the judgment of the Appellate Court, an appeal was taken to the Supreme Court. The Supreme Court reversed the decree of the Appellate Court, and said:

"As Reuter obtained the note from Niehoff before its maturity, for a valuable consideration and without notice of any of the alleged equities between the maker and Niehoff, in a suit upon the note McAuliffe would have no defense. But this is a suit to foreclose the deed of trust as a mortgage, and the law is well settled in this State that in such a suit, as a mortgage is a mere chose in action not negotiable, the mortgagor without notice of its assignment may interpose any defense arising out of the transaction with the mortgagee which he could set up against the mortgagee in case the bill were filed by him. This rule was announced in this State by this court in *Olds v. Cummings,* 31 Ill. 188, and has been re-stated and applied in a score or more cases since then, down to *Humble v. Curtis,* 160 Ill. 193, where it was said (p. 202): 'That he (the assignee) would take the mortgage subject to the equitable defenses existing in favor of the mortgagor is settled in *Olds v. Cummings, supra,* and numerous other cases. The reason there given is, that it is the duty of the purchaser of a mortgage, it not being assignable so as to vest the legal interest, to inquire of the mortgagor if there be any reason why it should

not be paid.' Thus, in *Thompson v. Shoemaker,* 68 Ill. 256, it was held that upon a bill filed by the assignee of a promissory note secured by mortgage, to foreclose the mortgage, he will occupy the same position that the mortgagee would, and that the mortgagor may interpose any defense that would defeat a recovery by the mortgagee. And in *Sumner v. Waugh,* 56 Ill. 531, that 'when a person buys that which is not assignable at law, relying upon a court of equity to protect and enforce his rights, he takes it subject to all the infirmities to which it would have been liable in the hands of the assignor.' And in *Haskell v. Brown,* 65 Ill. 29, it was said that in such case a court of equity will let in any defense which would have been good against the mortgage in the hands of the mortgagee himself. (See, also, *Towner v. McClelland,* 110 Ill. 542, and *Shippen v. Whittier,* 117 id. 282.) In the latter case the security was in the form of a deed of trust, and it was said that the fact that the maker's notes were payable to himself and were endorsed only by him was unimportant.''

In *Kennell v. Herbert,* 342 Ill. 464, a situation is presented similar to the one presented here. In that case, a bill had been filed by the circuit court of Kane county to foreclose a mortgage trust deed. The circuit court dismissed the bill for want of equity. The cause was reviewed by the Appellate Court of the 2nd District on writ of error (*Kennell v. Herbert,* 253 Ill. App. 252) and the decree of the circuit court affirmed largely upon the authority of *McAuliffe v. Reuter, supra.* In its opinion, the Appellate Court gave a statement of the facts, which is substantially as follows: ''The record shows that on October 18, 1919, Alva E. Herbert and wife applied for a loan from Charles Rippberger Company, in the sum of $1,700, and executed the notes described in the bill and trust deed, securing the same, which was recorded in the

recorder's office of Kane county, October 24, 1919; that the Charles Rippberger Company was a copartnership consisting of Sam T. Peterson, the trustee named in said trust deed, Walter C. Rippberger and Sophia Rippberger; that they had been engaged for a number of years prior to the transaction in question in loaning money; that Alva E. Herbert and wife indorsed the notes in question in blank, and after receiving the sum of $1,700 left the notes at the Rippberger office in the custody of Peterson, the trustee; that some time thereafter plaintiff in error purchased the notes from the trustee, and the name of the complainant was placed upon each of the notes as indorsee thereof, by either the plaintiff in error himself, or someone at the Rippberger office; that thereafter Alva E. Herbert and wife executed an agreement to sell the premises free and clear of incumbrances to William Kruse and Mary Kruse; that Herbert was notified that before the transaction could be completed he would be required to obtain a release deed from the trustee, releasing the trust deed in question, to the end that Herbert and wife would convey the property to Kruse free and clear of incumbrances in compliance with the terms of the written contract; that Herbert communicated with Peterson, the trustee, and Peterson advised that before he could execute the release deed he would either have to pay the principal of $1,700 and interest thereon, or execute other papers secured by other property of Herbert; that thereafter Herbert executed his four promissory notes aggregating $2,000, secured by a trust deed to Peterson, as trustee, on certain other property of his; that said $2,000 in notes were given to pay off the $1,700 in notes and interest, and the balance of his book account at the Rippberger Company office; that after the execution of said $2,000 in notes Peterson, as trustee, executed a release, dated April 19, 1921, duly acknowledged by him in the usual

form, releasing the trust deed first hereinabove mentioned, and delivered the same to Herbert; that a day or two thereafter Herbert delivered the release deed, together with warranty deed, executed by himself and wife to the premises, free and clear of all incumbrance, to William Kruse and Mary Kruse; that thereupon William and Mary Kruse paid to Herbert the balance of the purchase price in full, being $3,500, less the said $500 that was paid at the time of entering into the contract, and less certain deductions; that the plaintiff in error authorized his son, T. H. Kennell, Jr., to transact any and all business with reference to the $1,700 in notes; that the plaintiff in error and his son, T. H. Kennell, Jr., were acquainted with Herbert and his wife, and saw them from time to time while the plaintiff in error held the $1,700 in notes; that the interest upon the notes was paid to plaintiff in error by the trustee, by a Rippberger check; that neither plaintiff in error nor his son ever advised Herbert or his wife that he had possession of or claimed to own the notes in question; that neither Herbert nor his wife knew that the plaintiff in error had or claimed to have any interest in the notes, Herbert believing that the notes were held by Peterson, the trustee, at the Rippberger office, until December, 1925, after the trustee and his copartners filed a petition in bankruptcy, when Kennell, for the first time, called upon Herbert and demanded payment of the notes in question; that the Rippberger Company filed a petition in bankruptcy in December, 1925; that a day or two after the filing of the petition, Kennell, Jr., acting for his father, called upon Herbert at his home, and advised him that he held the notes and wanted to know what was to be done with reference to the same; that Herbert advised him that he had paid the notes long since, and inquired of Kennell why he had never spoken to him about the matter before. The next day Kennell called upon

Herbert personally, and Herbert again explained that he had paid the notes in full in 1921; that Kennell, Jr., on two or three occasions, called at the Rippberger office and consulted Peterson, the trustee, and Walter Rippberger, prior to the bankruptcy proceedings, demanding payment of the principal and interest; that the notes were past due, and finally Kennell told Rippberger that if they were not paid promptly, he would start legal proceedings to collect the same. It is insisted by plaintiff in error that because the release deed, executed by Peterson, the trustee, was in fact executed and delivered to Herbert before the maturity of the notes in question, that William and Mary Kruse, who were the purchasers of the property from Herbert, were in duty bound to obtain the canceled notes, so executed to Herbert and wife, or at least to make inquiry if the notes had, in fact, been paid. In commenting upon the evidence, the Appellate Court said: 'There is nothing in this record to show that the assignee of the notes, secured by the trust deed, ever filed anything of record, showing that he was the holder of the notes secured by the trust deed, sought to be foreclosed in this proceeding.' '' This cause was reviewed by the Supreme Court on certiorari. The Supreme Court reversed and remanded the judgment of the Appellate Court and the decree of the circuit court, with the direction to the circuit court to enter a decree of foreclosure as prayed, and the Supreme Court in its opinion (342 Ill. 464) said:

''In a suit to foreclose a lien against land the rights of the parties are governed by the law as administered in courts of equity and not by the law which obtains in actions to recover judgments upon the notes secured. (*Bartholf v. Bensley*, 234 Ill. 336.) A trustee is one to whom the property of another is legally committed in trust. The word 'trustee,' when appended to the name of a payee, is sufficient to charge persons

dealing with the trustee with notice of restrictions and limitations on the trustee's power over the instrument. The term is a warning and a declaration to everyone who reads it that the person so named is not the owner of the property to which it relates, that he holds it for the use and benefit of another, and that he has no right to deal with it except in accordance with the terms of the trust. (*Owens v. Nagel,* 334 Ill. 96; *Henshaw v. State Bank,* 239 id. 515; *Chicago Title and Trust Co. v. Brugger,* 196 id. 96.) Where a trust deed is owned and possessed by a third party who also owns and holds the note for which the trust deed is security the trustee has no implied authority to receive payment of the note, and if payment is made to the trustee without authority, and he releases a portion or all of the property from the lien of the trust deed prior to the maturity of the notes, the release has no effect upon the rights of the owner and holder of the trust deed and note to foreclose the same. (*King v. Harpster,* 306 Ill. 202.) *The owner and holder of notes secured by a trust deed is not bound by unauthorized payments to the trustee before maturity, and the payor is not justified in relying upon representations made by the trustee when the trustee has neither the actual nor implied authority to receive such payments and where the notes are not surrendered but remain in the hands of the owner and holder, who had no knowledge of the payments. If one pays to the trustee named in a trust deed the debt secured thereby before maturity which the trustee is not authorized to receive, and the trustee releases the trust deed but does not have possession of the notes, which are owned by and in the possession of a third party, the person so paying is chargeable with notice of the trustee's want of power to receive payment.* The inference of authority to receive payment arises from the possession of the trust deed and notes by the person to whom the payment is made,

the inference of authority is founded upon such possession, and it does not exist without such possession. (*Fortune v. Stockton,* 182 Ill. 454; *Stiger v. Bent,* 111 id. 328; *Cooley v. Willard,* 34 id. 68; 1 Am. & Eng. Ency. of Law. 1026.) In equity, a release by the trustee, unauthorized by the terms of the trust deed or by the *cestui que trust,* will have no effect upon the trust deed as between the original parties or subsequent purchasers with notice. (*Connor v. Wahl,* 330 Ill. 136; *Vogel v. Troy,* 232 id. 481; *Havighorst v. Bowen,* 214 id. 90; *Lennartz v. Quilty,* 191 id. 174; *Ogle v. Turpin,* 102 id. 148.) Where the release is executed by the trustee after the indebtedness is past due, in the absence of evidence of notice to subsequent purchasers such subsequent purchasers will be protected. *Mann v. Jummel,* 183 Ill. 523.'' (Italics ours.) It may be noted that the Supreme Court in the *Kennell* case made no reference to *McAuliffe v. Reuter, supra.*

In the instant case, these defendants cannot blame the act of the trustee upon complainant. It was their duty to have known to whom they were making payments, and to have demanded the notes as well as a release deed when the payments were made.

We find nothing in the record here which indicates that Ricker was the agent of complainant, the legal owner of the trust deed and notes, and as such was authorized to receive on her behalf the payments made by defendants, or that the indebtedness to complainant was paid and discharged, as alleged in the plea, and we are of the opinion that the court was in error in sustaining exceptions to the master's report and in dismissing the bill. The decree of the superior court is, therefore, reversed and the cause remanded with the direction that the court enter a decree conforming to this opinion.

*Reversed and remanded with directions.*

WILSON and HEBEL, JJ., concur.