Oscar Sundquist et al., Appellants, v. Rose V. Rubin et al., Appellees.

Gen. No. 8,796.

Opinion filed August 1, 1934.

T. O. Prather, Lawrence A. Smith and Karl C. Williams, for appellants.

Frank E. Maynard, James A. Penny, Karl J. Mohr, Welsh & Welsh, Smith & Menzimer and Hyer & Gill, for appellees.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

The appellants filed their bill in equity to foreclose a trust deed. The trial court sustained general demurrers of appellees to the bill as amended. Appellants have elected to stand by their bill and have appealed to this court for the reversal of the decree dismissing the bill as to the appellees. The bill as amended sets forth that on July 24, 1922, Rose V. Rubin and George A. Rubin, being indebted in the sum of $2,500, executed their three promissory notes for said amount, bearing

interest at six per cent per annum and payable two years after date thereof, which three notes are severally owned by appellants herein. To secure said indebtedness and interest said Rubins, on the same day, executed and delivered their trust deed, conveying thereby to Ernest C. Stokburger, trustee, 23 lots in third central park subdivision in Rockford, Illinois. The said trust deed was duly recorded in the recorder's office in Winnebago county, Illinois, on August 8, 1922.

The bill further sets forth that when said notes became due on July 24, 1924, the date of maturity thereof was, by written instrument, extended to July 24, 1927, at which time the date of maturity was further extended, by written instrument, to July 24, 1929. Neither of said extensions appears on record. The date of maturity of said notes was further extended from time to time, by verbal agreements and indorsements on said notes, to July 24, 1934.

By reason of default the appellants elected to declare the entire indebtedness immediately due and payable, as alleged in the bill.

The bill further sets forth that said Ernest C. Stokburger, as trustee, without any grant of authority or power contained in said trust deed so to do, and without the knowledge, consent or authority of appellants or their respective assignors, and without any consideration passing to them, executed and delivered nine partial releases, thereby releasing eleven of said lots, the first being executed and delivered on July 12, 1926, the last on June 24, 1931, and that said releases were fraudulent, void and of no effect as to the rights of appellants in the premises herein sought to be foreclosed.

The bill further charges that appellees, Mary Comstock and Marie Gaffney, are the holders and owners of certain notes secured by a trust deed on Lot 10.

Block 5, one of the lots under the trust deed herein sought to be foreclosed, executed and delivered by Fred C. Sally, Jr., and Irene L. Sally to said Ernest C. Stokburger, trustee, on April 7, 1928, and recorded on July 30, 1928; that the rights of said Mary Comstock and Marie Gaffney in the premises, under and by virtue of said trust deed and notes are subject to the rights of appellants.

The bill further alleges that appellee, Rockford Trust Company, was the trustee named in a trust deed executed and delivered by Andrew J. Davis, and Myrtle G. Davis, on January 2, 1930, and recorded on June 17, 1930, thereby conveying Lot 3 in Block 4, one of the lots under the trust deed herein sought to be foreclosed; that appellees, Anna Thomas, Mrs. W. H. Knowlton and Mrs. D. Comstock are the holders and owners of the notes secured by said trust deed so executed and delivered by said Davis and wife; that in said bill so amended the holders and owners of said notes are described as ''Unknown Owners,'' and the rights of said ''Unknown Owners'' are alleged to be subject to the rights of appellants.

The bill further alleges that appellees, Mary Haddad, James M. Haddad, Elizabeth F. Murphy and Home Lumber & Supply Company have or claim some interest in the premises herein sought to be foreclosed, or some part thereof, but that whatever interest they may have, the same is subject to the rights of appellants.

Each and all of the lots in which appellees claim an interest are lots so released by said partial releases.

The bill prays for an accounting, a foreclosure of the trust deed executed by said Rubins, and that said nine releases be declared null and void and ineffectual as to the rights of appellants.

The only points raised under said general demurrer are the questions of the validity of said partial releases and the priority of rights with respect thereto.

The appellants contend that said releases are invalid and of no effect as to their rights under said trust deed, because said trust deed provided no manner, means, method of, or grant of, authority to the trustee to execute and deliver a release or releases of a part of the premises thereby conveyed, and the holders of the notes secured by said trust deed have never given any authority, direction or instructions to said trustee to execute and deliver any of the releases aforesaid; that said releases were executed and delivered without the knowledge and consent of said noteholders and without any consideration passing to them. Appellants further contend that appellees do not stand in the position of innocent purchasers without notice, for said trust deed appeared of record when each and all of said releases were so executed and delivered and the same still appears of record unreleased, thereby constituting notice to the world of the trustee's limited power and authority to release the premises so conveyed. Appellants contend that in determining the validity of said releases it is immaterial whether they were executed and delivered before or after maturity of the notes. They also contend that whether or not appellees are innocent purchasers without notice is a question of fact to be established by affirmative proof and not a question to be heard on a general demurrer.

The appellees contend that they should be protected as subsequent purchasers without notice of any existing indebtedness at the time of their purchase, because said releases were executed and delivered by the trustee after maturity of the mortgage indebtedness; that they had no notice of any extension agreements; that said extension agreements do not appear of record.

The question presented to this court is, the validity of the releases executed by Stokburger, the trustee, at times subsequent to the maturity of the notes secured by the original deed of trust. The same question was before our Supreme Court in the case of *Mann v. Jummel,* 183 Ill. 523. The court in discussing the case quotes from *Williams v. Jackson,* 107 U. S. 478, as follows: "The first deed of trust from Sweet and wife did not give the trustees merely a power to release the land on payment of the notes secured thereby and to sell on default of payment, but it vested the legal title in them. A release of the land before payment of the notes would be a breach of their trust, and would be unavailing in equity to any one who had knowledge of that breach. But it would pass the legal title. The legal title in the land being in the trustees under the first deed of trust, passed by their deed of release to Mrs. Sweet, and from her by the second deed of trust to the trustees for Williams. The first deed of trust having been made to the trustees therein named, for the benefit of Augustus Davis, and to secure the payment of the notes from the grantors to him, and the plaintiffs, upon the transfer and endorsement to them of those notes, having taken no precaution to obtain and put on record an assignment of his rights in such form as would be notice to all the world, the recorded deed of release executed by him as well as by the trustees, reciting that the notes had been paid and conveying the legal title, bound the plaintiffs, as well as himself, in favor of any one acting upon the faith of the record and ignorant of the real state of facts.

"Not only did the record fail to show that any third party claimed any lien upon the property when the second mortgage was purchased by Jummel, but from the recitals in the deed the indebtedness was past due more than five years when the release was executed and recorded. A trustee in deeds of trust of this

kind has the power to release the lien so as to re-vest the legal title in the grantor, even though he does so without the consent of the *cestui que trust* and in violation of the obligations of his trust. (*Walton v. Follansbee,* 131 Ill. 147, and cases cited.) In equity, however, a release unauthorized by the terms of the trust or by the *cestui que trust* will have no effect upon the deed of trust, as between the original parties or as to subsequent purchasers with notice. (*Barbour v. Scottish-American Mortgage Co.,* 102 Ill. 121; *Stiger v. Bent,* 111 id. 328; *Insurance Co. v. Eldridge.* 102 U. S. 545; *Williams v. Jackson, supra.*) And we think the law is, that when the record shows that the release was executed after the indebtedness was past due, in the absence of all evidence of notice to the subsequent purchaser, he will be protected."

This case was cited with approval in *Kennell v. Herbert,* 342 Ill. 464, 469, in which it is said: "Where the release is executed by the trustee after the indebtedness is past due, in the absence of evidence of notice to subsequent purchasers such subsequent purchasers will be protected."

The appellants contend that there is a material distinction between a partial and a total release of property covered by a trust deed and that in this case the trustee had no authority to release a part of the lots covered by the trust deed. Each of the lots in question is a separate and distinct parcel of land, bearing an individual and separate legal description; the description of no one lot will fit that of another, and the conveyance thereto must be by a proper description of the several lots involved; that there should be no confusion resulting from the release of one or more of the lots from the original trust deed. Counsel have not cited any cases that sustain their contention that a different rule should apply in releasing all, or only a part of the mortgage premises. It was within the

power of the holders of the notes to have recorded the assignment to them which would give notice to the world that they were the legal holders of the notes and thus protect their rights. In the case of *Culhane v. Layman,* 273 Ill. App. 557, we held that where one of two innocent parties must suffer loss, he, who by his negligent conduct made it possible for the loss to occur must bear the loss.

The appellants insist that the points raised by the bill are not proper on demurrer in a bill in chancery, but the same should have been raised by answer to the bill. The bill sets forth the facts but does not charge that the appellees had any notice aside from the record of the deed of trust that the lots released were not free and clear of all incumbrances. We think the question was squarely presented to the court on the bill and demurrer and need not be raised by answer.

There is another serious defect in the bill, that it does not state when the appellants became the owners of the notes in question, whether before or after the maturity of the debt. It is our opinion that the trial court properly sustained the demurrer to the bill of complaint.

The decree of the circuit court of Winnebago county should be, and is, hereby affirmed.

*Judgment affirmed.*