Emily Feitl, Appellee, v. Konrad Ricker et al., Appellants.

Gen. No. 38,909.

Opinion filed November 30, 1936.

ARND, GAVIN & HANLEY, for appellants; FREDERICK ARND and JAMES J. HAJEK, of Chicago, of counsel.

KERNER, JAROS & TITTLE, of Chicago, for appellee; JULIUS H. SELINGER, of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by leave from a decree of sale and foreclosure entered in the circuit court of Cook county June 4, 1935. The bill was filed April 18, 1933, and alleged the execution by Konrad Ricker and Barbora Ricker, his wife, on July 30, 1927, of the principal promissory note for $3,000, to the order of themselves, due in three years from date with interest at six per cent, payable annually, and evidenced by coupons of the same date; the execution and delivery on the same date by the same parties of a trust deed conveying certain premises in Chicago, Cook county, Illinois (as security for the indebtedness represented by the note and coupons) to A. C. Ricker as trustee; the maturity of the note on July 30, 1930, and that the makers thereof, by an extension agreement with complainant, the owner, extended the time of payment for a further period of three years, namely, until July 30, 1933, executing interest coupons for the extended period.

The bill further alleged default in payment; that A. C. Ricker on August 4, 1930, executed a release deed

without the knowledge of complainant, the owner of the indebtedness, and that on July 26, 1930, Herbert F. Brandner and Marie Brandner conveyed the premises to Konrad Ricker as trustee to secure their note for $3,000 due five years from date; that the deed was recorded August 4, 1930; that this deed was a valid lien, subordinate, however, to the lien of the trust deed to A. C. Ricker. The bill made defendants thereto Konrad and Barbora Ricker, A. C. Ricker, individually and as trustee, Herbert G. Brandner and Marie Brandner, his wife, Konrad Ricker as trustee, and unknown owners, who were thereafter disclosed to be Fred Pernsot and Marie Pernsot, his wife. June 4, 1935, by way of amendment, the complainant averred: "That the purported release by said Trustee, A. C. Ricker, appearing of record, dated August 4, 1930, and recorded September 10, 1930, as Document No. 10745480, is not the deed of said A. C. Ricker, trustee, and was never executed or acknowledged by said Trustee; that the signature appearing on said release is not the genuine signature of A. C. Ricker; that said release deed was not signed at her request or direction, and that said purported release deed was issued in violation of the rights of the complainant and is a forgery and should be expunged from the record; that at the time of the purported release, all of the notes including said trust deed were in the possession of your oratrix and were at the time unpaid and still remain unpaid and are still in the possession of your oratrix who is the owner and legal holder thereof and that said purported release executed by said A. C. Ricker, as Trustee, is void and fraudulent as to the rights of your oratrix and is of no effect."

A. C. Ricker, individually and as trustee, answered denying knowledge, and demanding strict proof of the facts averred. The Brandners answered that they were the owners of the premises, and that Fred Pern-

sot and Marie Pernsot were owners of the indebtedness secured by the trust deed to Konrad Ricker. They also averred that the release by A. C. Ricker, as trustee, on August 4, 1930, was valid and not fraudulent, that the lien of the trust deed to Konrad Ricker was not subordinate, and that the complainant was not entitled to the relief prayed. The cause was put at issue and referred to a master, who took the evidence and reported that the equities were with the complainant. The cause was heard by the chancellor upon exceptions to the report of the master, which were overruled, and a decree entered finding that the supposed release by A. C. Ricker was a forgery, and that the same should be removed from the records and foreclosure of complainant's trust deed granted. The Rickers, Brandners and Pernsots have perfected this appeal.

The evidence shows that on July 26, 1930, the Brandners borrowed $3,000 from Fred Pernsot and executed a trust deed conveying the premises to Konrad Ricker, trustee, to secure the same; that on the same date they gave $3,000 to Konrad Ricker, Jr., at the office of Konrad Ricker, in payment of the note held by complainant, and defendants contend that the complainant, by reason of the facts hereinafter recited, is estopped to deny the agency of A. C. Ricker in that respect.

Konrad Ricker was in the real estate business in Chicago from and after the year 1893. January 30, 1927, he was owner of the premises in question, and on that date he, with his wife, executed their notes and trust deed as above described. The principal note recited: "Both principal and interest are payable at the office of Konrad Ricker, 2458 S. St. Louis Avenue in Chicago, Illinois, or such other place as the legal holder hereof may from time to time in writing appoint."

In September, 1927, Konrad Ricker sold these notes and trust deed to plaintiff and delivered them to her to-

gether with an insurance policy, all of which have since been retained in her possession. In 1928 Konrad Ricker and wife by deed conveyed these premises to defendants Herbert F. Brandner and wife. Interest notes Nos. 1 and 2 were at the time delivered by Ricker to the purchaser. When interest note number 3 was about to mature Konrad Ricker notified Brandner, and in response to the notice Brandner went to the office of Ricker and paid the note. Brandner did not get the note but Ricker told him it would be mailed to him, and about a week later Brandner received the note by mail. Subsequent interest notes were paid by Brandner to Konrad Ricker in the same way. Plaintiff, on each occasion, brought the note to Konrad Ricker's office, received payment and delivered the note to Ricker, who forwarded it to Brandner. The principal note became due July 30, 1930. A week before it was due Brandner told Konrad Ricker he was going to pay it and asked him to have everything ready. Four days before the maturity of the principal note, namely, July 26, 1930, Brandner, Mrs. Brandner and the father-in-law of Mr. Brandner, Fred Pernsot, went to the office of Konrad Ricker and paid the amount of the principal note to Konrad Ricker, Jr., taking a receipt therefor. At the same time the abstract of the premises was delivered to Brandner, and Ricker, Jr., told the parties that the note would be mailed to them later. The payment was made by the check of defendant Fred Pernsot, and Ricker, Jr., was told to make out a mortgage on the land in favor of Pernsot. Ricker, Jr., made out the papers, a note for $3,000 to the order of Pernsot dated July 26, 1930, and a trust deed to Konrad Ricker, trustee, conveying the premises as security for the payment of the note. This trust deed was recorded August 4, 1930. On the same date Konrad Ricker delivered to Brandner the purported release of the trust deed held by plaintiff. The signature of the trustee, A. C. Ricker, is

not genuine, and Ricker, Jr., before whom the supposed release was executed, says that he did not take the acknowledgment, and that his signature thereto is not genuine, and that some other person affixed his notarial seal, which appears thereon. Brandner did not receive the note for $3,000, which had been paid, and upon inquiry was informed by Konrad Ricker that he was keeping the note because it was signed by himself and wife, and he was entitled to it. Some time in 1928 the plaintiff first received information that Brandner had bought the premises. July 30, 1930, plaintiff took the last interest coupon to Ricker's office where it was paid, and Ricker told her that Brandner wanted to have the mortgage renewed. She replied that this would be all right. As a matter of fact, Brander never requested an extension. About a week later Konrad Ricker handed to plaintiff an agreement in writing which purports to extend the time of maturity of the principal note held by plaintiff. At the same time he delivered to her interest coupons representing the supposed interest which would become due and payable during the extended period. These interest notes were signed by Konrad Ricker and Barbara Ricker. Brandner's name is not on them. The interest notes as they became due were paid to plaintiff at Ricker's office upon presentation of them by plaintiff at the maturity thereof. Plaintiff did not learn of the payment of her note to Ricker, Jr., by Brandner until coupon number 11 became due in 1933.

Complainant lived in the same neighborhood as Konrad Ricker and had purchased other notes and trust deeds from him prior to this time. In their reply brief defendants disclaim any contention that Konrad Ricker had any express or implied, apparent or real authority to receive payment of complainant's note or to secure a release of the trust deed by which it was secured. That such a contention could not prevail is apparent

from the many cases in which, under similar circumstances, the courts have decided to the contrary, as will appear by examination of *Kennell v. Herbert,* 342 Ill. 464; *Culhane v. Layman,* 273 Ill. App. 557; *Kozien v. Vikidal,* 276 Ill. App. 9; and *McCoy v. Montgomery Ward & Co.,* 286 Ill. App. 405.

The theory of defendants is stated in their reply brief:

"In order that there may be no further misapprehension of defendants' contention, we repeat: the law to be applied to the facts herein is not that of agency but is the law of estoppel applicable to authority to collect. The question is not whose agent Ricker was when he received said payment. The sole question is, whether or not the plaintiff is estopped to deny the authority of Ricker to receive payment of said note. *If she is not so estopped, the decree below should be affirmed. If, on the contrary, she is so estopped, the decree should be reversed.* Plaintiff's argument and authorities afford no aid to the solution of that question."

In Mechem on Agency, vol. I, sections 245, 246, pages 177, 178, the author says:

"Estoppel is always a matter personal to the individual asserting it and he must therefore show that he was misled by the appearances relied upon. It is not enough that he might have been, or that some one else was, so misled. It must also appear that he had reasonable cause to believe that the authority existed; mere belief without cause, or belief in the face of facts that should have put him on his guard is not enough.

"Gathering together all of these elements, it may be stated as a general rule that whenever a person has held out another as his agent authorized to act for him in a given capacity; or has knowingly and without dissent permitted such other to act as his agent in that capacity; or where his habits and course of dealing have been such as to reasonably warrant the presump-

tion that such other was his agent authorized to act in that capacity;—whether it be in a single transaction or in a series of transactions—his authority to such other to so act for him in that capacity will be conclusively presumed to have been given, so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith *and in the exercise of reasonable prudence;* and he will not be permitted to deny that such other was his agent authorized to do the act he assumed to do, provided that such act was within the real or apparent scope of the presumed authority.''

This doctrine of estoppel to deny authorization is dealt with in the Restatement, Agency, section 31, where it is stated in substance that a person who *manifests to a third person* that he has an authorized agent by an instrument under seal or by other formality is subject to liability to such third person as if the authorization had been by such means ''if the third person changes his position in reasonable reliance upon the manifestation.'' Section 161 of chapter 6 of the same authority states:

''A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which he is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that the agent is not so authorized.''

The distinction between apparent authority of an agent and an estoppel to deny authority on the part of an agent is clear, although the Illinois Annotation to these sections of the Restatement would indicate the distinction is not always recognized. The defendant relies upon *Linowiecki v. Wisniewski,* 249 Ill. App. 474, where the syllabus of the case states in substance that where defendants had executed a series of notes secured

by a trust deed, which were payable at the office of the trustee, and ten of the notes had been paid at his office, an assignee of the remaining notes was estopped to deny the agency of the trustee to receive payment of the last note of the series.

It was contended that Weber & Weber, of which firm the trustee was a member, was not authorized to receive payment of the note, and that it was the duty of defendants to see that the money was paid to the actual holder. It was also argued that the defendants, having paid the note without its production at the time, paid it at their peril. The original loan, for which a trust deed was given as security, was made at the office of Weber & Weber, a firm engaged in the real estate and loan business, and the notes were made payable at their office. The court said that these facts standing alone might not be sufficient to authorize Weber & Weber to make collection on these notes, but that this was a fact to be considered with all the other facts and circumstances of the case, that "An agent authorized to make a transaction is not necessarily authorized to collect by reason thereof and a person paying a note, except to the owner, ordinarily does so at his peril. The holder and owner of a note, however, may by his conduct impliedly create an agency and it is not necessary that the agency be constituted by a direct authorization. *James v. Conklin & Hill,* 158 Ill. App. 640, where the court in its opinion says: 'Payments made to an agent are good and obligatory upon the principal, in all cases where the agent is authorized to receive payment, either by express authority, or by that resulting from the usage of trade, or from the particular dealings between the parties. *Noble v. Nugent,* 89 Ill. 522, citing Story on Agency. The principal is equally bound by the authority which he actually gives, and by that which by his own acts he appears to give. The principal is responsible for the appearance of authority. *Smith v.*

*Peoria County,* 59 Ill. 412; *Phoenix Ins. Co. v. Stocks,* 149 Ill. 319.' "

The opinion goes on to state that the nine previous notes had been paid at the office of Weber & Weber; that the plaintiff was aware of that fact, and that if he did not desire collection to be made by them, he had ample opportunity to have notified the makers of the notes that they should be paid to him directly and not through an intermediate person or agency; that the plaintiff, by his course of conduct, had agreed to the payment of the notes without their production at the office of Weber & Weber, "as it appears from his own testimony that he would not deliver the notes until he had first received the money and, for that reason apparently would not deposit them with that firm."

That case is distinguishable from this in several respects. In the first place that was an appeal by the plaintiff from a judgment for defendant entered upon the verdict of a jury in favor of defendant in an action at law on the note. This is a proceeding by bill in equity, where the finding of the master on the facts in favor of plaintiff has been approved by the chancellor. In the second place, in that case the note which was paid to the supposed agent was paid on or *after its maturity.* In this case, payment of the note was made four days *before maturity.* Third, in that case the notes which had been paid prior to the final payment were all of the same kind as the one last paid, in that the same were principal notes. In this case, only interest coupons were paid at the office of Konrad Ricker prior to the payment of the principal note. Fourth, the cases are also distinguishable in that in the *Linowiecki* case the supposed agent was not the original debtor upon whom rested the primary obligation to pay the note. In this case Ricker, the supposed agent, was the maker of the principal note and coupons, primarily obligated to pay the same, and the defendants all had actual notice of

that fact. It was not unnatural that Brandner, who had made the agreement with Ricker that he, Brandner, should pay Ricker's note, should hand the money over to Ricker, trusting him to pay it to the owner of the note. The evidence shows that Brandner, not complainant, chose Ricker as the agent through whom Ricker's notes should be paid. Complainant at no time made any request that payment should be made to her through Ricker. The arrangement as to payment was made through Ricker, who originally was the owner of the premises, and Brandner, to whom Ricker conveyed the premises. Complainant was not a party to that agreement, and did not, so far as the evidence discloses, have knowledge of it at the time it was made. Brandner knew and from the very nature of the transaction must have understood, that the interests of Konrad Ricker were adverse to those of complainant. This is evidenced by the fact that without request of complainant and without her knowledge Brandner and his father-in-law chose Ricker, Jr., to draw up the papers for the new mortgage and consented that Konrad Ricker should take the conveyance as trustee in this transaction, of which also the undisputed evidence shows complainant was wholly ignorant. In other words, Brandner, in taking title to the premises and conveying it in trust to secure his own indebtedness to his father-in-law, chose Konrad Ricker as his own agent or instrumentality. He did not at any time rely upon complainant. She at no time, either by word of mouth or by conduct, made any representation to him with reference to the transaction, and she is therefore not estopped to deny that Konrad Ricker was her agent in releasing the trust deed. If she were estopped under the circumstances recited, Brandner would in turn, under the circumstances, be estopped to assert an estoppel as against her. Brandner accepted the excuse given by Konrad Ricker for not producing complain-

ant's note, namely, that he, Ricker, was the maker of the note and entitled to it. In prior dealings between the parties the coupons, also made by Ricker, were not retained by Ricker but were delivered to Brandner, and Brandner should, therefore, have known that this excuse was not plausible. Nevertheless, he accepted it.

In the last analysis, a case seems to be presented where one of two innocent persons must suffer. Brandner, through his payment *before* maturity to an agent who he knew had interests adverse to the complainant holder of the note, and by payment negligently before the note was due and without causing it to be produced, made the loss possible. Equitably, therefore, the loss should be borne by him.

The decree is affirmed.

*Affirmed.*

O'Connor and McSurely, JJ., concur.